STATE *ex rel.* LARRY STEPHEN KISNER

*v.*

FRED L. FOX, II, *Judge of*

*the Circuit Court of Marion*

*County, West Virginia, and*

FRANK C. MASCARA, *Prosecuting*

*Attorney of Marion County,*

*West Virginia*

(No. 14808)

Decided June 17, 1980.

124

*Stanton & Stanton and G. Patrick Stanton, Jr.,* for relator.

*Chauncey H. Browning,* Attorney General, *Lawrence R. Frail,* Assistant Attorney General, for respondents.

NEELY, CHIEF JUSTICE:

This prohibition proceeding presents an opportunity to address a problem that, fortunately, has been a rare occurrence in our State, namely, what happens when the State cannot produce the transcript of a criminal trial because the court reporter's notes have been lost? We hold that absent extraordinary dereliction on the part of the State, the defendant is not entitled to discharge, but will have the option of appealing on the basis of a reconstructed record, or of being tried again.

Relator, Larry Stephen Kisner, was tried and convicted of sexual assault in the first degree on 27 April 1979. During the trial, the relator moved for a directed verdict on the ground that the evidence was not sufficient. Relator filed a notice of intent to appeal which cited several points of error, including the failure to provide sufficient evidence. The Court granted relator's request for a free transcript; however, the court reporter lost his notes and, therefore, could not certify the record. On 2 January 1980 the Circuit Court of Marion County set aside the verdict, judgment, and sentence, and ordered that the relator be retried.

## I

Initially we must decide whether the relator has grounds for requesting the extraordinary relief offered by the writ of prohibition. This action clearly falls within the ambit of prohibition since it presents a substantial, clear-cut, legal question of first impression with no disputed facts. *Hinkle v. Black*, ___ W.Va. ___, 262 S.E.2d 744 (1979).

It has been well established by the United States Supreme Court, and by our Court, that an indigent defendant has a right to appeal his conviction and that he is constitutionally entitled to a copy of the transcript of his trial. *Griffin v. Illinois*, 351 U.S. 12 (1956); *Varney v. Superintendent*, ___ W.Va. ___, 264 S.E.2d 472 (1980). The State has the responsibility of producing a certified copy of the transcript, and in this instance the loss of the court reporter's notes makes it impossible for the State to meet its obligation. If it can be shown that the State has been "extraordinarily derelict in affording the accused his right to a timely appeal," *Johnson v. McKenzie*, ___ W.Va ___, 235 S.E.2d 138 (1977), then the defendant may be discharged. In *Johnson* the State failed to give proper assistance to the defendant during two eight-month appeal periods and in *Varney, supra* the State refused to produce the transcript during the appeal period and the reporter's notes were subsequently lost. There has been no comparable dereliction in the case before us.

In providing the defendant the option to be tried again, or to appeal on the basis of a reconstructed transcript, our Court is granting the defendant relief which is superior to the majority of states who grant a new trial only when the defendant establishes that methods for providing a reconstructed record are inadequate.[1] Certainly the Supreme Court does not mandate a new

---

[1] *See, Curry v. State*, 148 Ga. App. 59, 251 S.E.2d 86 (1978); *Commonwealth v. Harris*, ___ Mass. ___, 379 N.E.2d 1073 (1978); *State v. Stafford*, 223 Kan. 62, 573 P.2d 970 (1977); *People v. Glass*, 43 N.Y.

trial in every case in which the transcript is lost through no fault of the defendant, *Norvell v. Illinois*, 373 U.S. 420 (1963). It has been well established that the lack of a verbatim transcript does not constitute a constitutional defect when a suitable alternative is provided, *Mayer v. City of Chicago*, 404 U.S. 189, 194, 92 S. Ct. 410, 414, 30 L.Ed.2d 372 (1971)[2], and it is obvious that appeals were perfected, heard, and justly determined long before modern stenography was perfected. At the same time, we would not deprive the defendant of the opportunity to have a complete transcript if he so desires because as Justice Douglas noted,

> Recollections and notes of trial counsel and of others are apt to be faulty and incomplete. Frequently, issues simply cannot even be seen—let alone assessed—without reading an accurate transcript *Hardy v. United States*, 375 U.S. 277, 280 n.3 (1964), citing Boskey,"The Right to Counsel in Appellate Proceedings," 45 Minn. L. Rev. 783, 793 (1961).

While Justice Douglas was discussing appellate counsel unfamiliar with the trial, who would therefore be totally dependent on the trial record, his rationale is still applicable to our case. Prejudical remarks, hidden issues, and questions relating to the judge's instructions to the jury

2d 283, 401 N.Y.S.2d 189, 372 N.E.2d 24 (1977); *State v. Moore*, 87 N.M. 412, 534 P.2d 1124 (1975); *State v. Neely*, 21 N.C. App. 439, 204 S.E.2d 531 (1974); *State v. Hart*, 110 Ariz. 55, 514 P.2d 1243 (1973); *Whetton v. Turner*, 28 Utah 2d 47, 497 P.2d 856 (1972), *cert. denied*, 414 U.S. 862 (1973); and, *Yancey v. State*, 267 So.2d 836 (Fla. Dist. Ct. App. 1972). *But see, Commonwealth v. Shields*, 477 Pa. 105, 383 A.2d 844 (1978).

[2] The Supreme Court in *Mayer, supra* reasoned that:
Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. A statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript.
*Draper v. Washington*, 372 U.S. 487, 495, 83 S. Ct. 774, 9 L.Ed.2d 899 (1963).

may all disclose error substantial enough to reverse the conviction. Therefore, we feel compelled to offer the defendant the best possible, yet resonable, alternative when he has been prejudiced through no fault of his own.

In granting the defendant the opportunity to select which alternative is most advantgeous to him, we perceive the possibility of abuse by a defendant who delays electing his remedy. Therefore, we direct that the defendant must make his election within thirty days after being informed that a transcript is unavailable.

## III

Defendant argues that his appeal has been effectively destroyed because there was insufficient evidence in the original trial and that a new trial would provide the State with an opportunity to cure this defect. Under *State v. Frazier,* ___ W.Va. ___, 252 S.E.2d 39 (1979), the Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply sufficient evidence. Nevertheless, the burden of proving that the trial court acted without sufficient evidence is upon the defendant. This would appear, at first blush, to be a *Catch 22* holding (to allude for a moment to Joseph Heller's novel) since in order to show irregularity the defendant must first have a record. While theoretically the denial of a transcript would appear to deny the defendant an effective appeal on the issue of sufficiency, from a practical perspective the objection is entirely speculative. If, indeed, the evidence is insufficient, the relator can reconstruct the record and argue insufficiency on appeal.[3] On the other hand, if the defendant is relying upon innuendo, bad instructions, or prejudicial comments, he gets the most he could have gotten on an appeal, namely a new trial. In a rape trial, where the victim testifies (and it was conceded in oral argument before this Court that the victim did testify) it is difficult to make a convincing claim of insufficiency.

---

[3] In this instance a tape recording of the trial is available.

It is one thing to accept the propositon that insufficiency mandates a discharge rather than a new trial, *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L.Ed.2d 1 (1978); it is quite another to superimpose upon this rule a presumption that absent a record the evidence was insufficient. To the contrary, there has always been a presumption of regularity in trial court proceedings and judgments. *Galpin v. Page*, 18 Wall [85 U.S.] 350, 365, 21 L.Ed. 959 (1874). Here the defendant has given us no reason to presume irregularity because there is no suggestion or substantiation of irregularity beyond the defendant's bare allegation.

For the reasons assigned the writ of prohibition is denied.

*Writ Denied.*