STATE OF WEST VIRGINIA

*v.*

DAVID HELMICK

(No. 14798)

Decided January 19, 1982.

Steptoe & Johnson, Irene M. Keeley and Herbert G. Underwood for appellant.

*Chauncey H. Browning,* Attorney General, and *Ronald A. Shipley,* Assistant Attorney General for appellee.

McGRAW, JUSTICE:

The appellant, David Helmick, appeals from the final order of the Circuit Court of Lewis County which adjudged him guilty, upon a jury verdict, of murder in the first degree with a recommendation of mercy. In accordance with W.Va. *Code* § 62-3-15 (1977 Replacement Vol.), the court sentenced the appellant to confinement in the penitentiary for life with the qualification that the appellant is eligible for parole after having served ten years. The appellant is confined at Moundsville.

The appellant's assignments of error are that the trial court erred: by restricting the appellant's *voir dire* of prospective jurors; by refusing to inquire regarding their exposure to prejudicial press coverage; by refusing to make available to defendant for review on cross-examination certain reports and written statements which had been used by a State witness to refresh his recollection prior to taking the stand; by giving of certain State instructions and in the refusal to give instructions offered by the defendant; by failing to record counsel's closing arguments and in overruling certain objections to the prosecutor's remarks during these arguments; and, finally, the court erred by committing numerous errors the cumulative effect of which prevented the defendant from receiving a fair trial. We have carefully considered all of the errors alleged by the appellant, and we hold that for the reasons which will be stated in the following opinion the appellant's conviction was invalid and must be reversed.

The appellant is alleged to have shot and killed the deceased while burglarizing her home. He and two companions were alleged to have been in the process of burglarizing the deceased's home when she arrived there unexpectedly. The appellant allegedly shot her at close range with a shotgun. The record contains no pre-trial

procedural abnormalities, and this Court will therefore discuss the assignments of error outlined above.

I

The appellant's first assignment of error is that the trial court erred by restricting his *voir dire* and by sustaining the State's objections to specific questions proferred by the defense which were designed to determine whether a juror might be prejudiced or biased. Specifically, the appellant appears to be most concerned about the seating of one jurror who indicated that she knew the prosecuting attorney because of a casual acquaintance with his mother and because she went to the same church as he did. This juror also stated that her acquaintance with the prosecutor would not influence her decision at the trial.

In its seminal decision in *State v. Pendry*, _____ W.Va. _____, 227 S.E.2d 210 (1976), this Court held that insufficient or improper *voir dire* constitutes grounds for granting a new trial. In *Pendry*, the defense unsuccessfully challenged four jurors for cause, then asked leave of the court to question each of them in chambers to explore certain matters disclosed on *voir dire*. Instead, the court addressed a general inquiry to the whole panel. This Court, on appeal, noted:

> That procedure, although unobjectionable, may not have been as desirable as allowing a procedure which would have permitted possible matters of bias or prejudice to be more fully explored so that there could have been no question of lack of qualification on the part of any juror and so that peremptory challenges might have been more intelligently made.
>
> 227 S.E.2d at 217.

Accordingly, under the standard elucidated in *Pendry*, defense counsel is expected to engage in "meaningful" *voir dire* and, in order to give content to that standard, may ask specific questions designed to determine whether a juror, even without his knowledge, may be biased or prejudiced. *Id.*

Thereafter, in *State v. Pratt*, 161 W.Va. 530, 244 S.E.2d 227 (1978), this Court fully examined the principles underlying *voir dire* examination previously enunciated both in *Pendry* and its progenitor, *W. Va. Human Rights Commission v. Tenpin Lounge, Inc.*, 158 W.Va. 349, 211 S.E.2d 349 (1975), and held that it is an abuse of discretion and reversible error for a trial court to refuse to question, individually, those jurors who disclose a relationship or close association with police officers. 244 S.E.2d at 232.

In the instant case, defense counsel moved the trial court for individual and separate *voir dire* in compliance with *Pendry's* and *Pratt's* dictates. The court granted the motion but apparently determined that it was not required to allow defense counsel the opportunity to develop evidence of prejudice as it became apparent during the selection process. As a result, the court sustained the State's objections to numerous of defense counsel's questions and, in particular, refused to allow defense counsel to delve into the extent of the acquaintance of one juror, Jacqueline M. Thomas, with the prosecutor.

The case which comes closest to the action at hand is *State v. Payne*, ____ W.Va. ____, 280 S.E.2d 72, 76 (1981), where this Court held that a juror should have been excluded where it was "revealed that one juror was a close friend of the special prosecutor and his wife and that the juror's husband was the Democratic nominee for Sheriff of Mercer County." This decision was based in part on *State v. West*, 157 W.Va. 209, 219, 200 S.E.2d 859, 866 (1973), where this Court said "when the defendant can demonstrate even a tenuous relationship between a prospective juror and any prosecutorial ... arm of ... government, defendant's challenge for cause should be sustained by the court." Should this situation arise again on retrial, the court below should learn from the teachings of these cases.

The appellant alleges that the trial court committed error in refusing to separately inquire of the jurors concerning their exposure to highly inflammatory extrajudicial newspaper and television coverage during the

trial. In Syllabus Point 6 of *State v. Williams*, 160 W.Va. 19, 230 S.E.2d 742 (1976), this Court stated:

> A trial court must inquire beyond a simple and direct questioning of a juror as to whether he can decide a case fairly and impartially after having read news articles related to the trial of a case. Specific questions should be asked in order to determine whether a juror, even without his own knowledge, may be biased or prejudiced.

The newspaper stories in this case consisted of reports which listed some of the materials stolen from the decedent's home which were excluded from evidence. Local cable television news commentary concerning the trial was also objected to. While it is difficult to determine from a record which does not contain any of the news material which was objected to, and while decisions like this are within the discretion of the trial court, such discretion must be shaped by the holdings of this Court, and in this case do not appear to have been done so. Once again, where there is any possibility of prejudice, a hearing should be conducted.

## II

The appellant's next assignment of error is that the trial court erred by refusing to allow the defendant to inspect, for the purposes of cross-examination, notes or written statements previously used by a witness to refresh his recollection.

In *State v. Dudick*, 158 W.Va. 629, 213 S.E.2d 458 (1975), this Court incorporated the *Jencks* rule[1] of liberal discovery in criminal cases into the common law of West Virginia. *Dudick's* liberal policy was reiterated and extended even further in Syllabus Point 3 of *State v. Sette*, 161 W.Va. 384, 242 S.E.2d 464 (1978), where this Court held that:

> Unless there are compelling circumstances which dictate to the contrary, a criminal defen-

---

[1] *See Jencks v. United States*, 353 U.S. 657 (1957), and later codification of the holding therein in 18 U.S.C. § 3500.

dant, upon proper motion, is entitled, for the purpose of cross-examination, to have any written statements in the State's possession made by a prosecution witness who has testified aginst the defendant; furthermore, the defendant must be given a reasonable opportunity to study the statements and prepare cross-examination.

In the instant case, the court refused to grant defense counsel's request to review notes or statements clearly within the *Sette* rule. The State's witness was the chief investigating officer of the murder for which the petitioner was tried and convicted. Although this witness admitted that for purposes of refreshing his recollection he had reviewed his report of the investigation of the case on the night prior to his testimony, he refused to use the report to refresh his recollection during his testimony. Defense counsel carefully established that he had indeed used the report to refresh his recollection and moved the court for a copy of that report. The court refused. Because this witnesses' investigation report was within the State's possession and was required to be turned over, upon proper motion, to defense counsel under the mandates of *Dudick* and *Sette*, reversible error occurred when such disclosure was not afforded defense counsel. *See also Com. v. Contakos,* \_\_\_ Pa. \_\_\_, 424, A.2d 1284 (1981); *People v. Kingsley,* 187 Col. 258, 530 P.2d 501 (1975); *State v. Green,* 603 Ariz. 211, 439 P.2d 483 (1972).

## III.

Appellant's next argument is that he was prejudiced by the failure of the trial court to record the prosecuting attorney's closing arguments.

This Court has previously recognized that omitted portions of the record can cause a petitioner prejudicial hardship. *Johnson v. McKenzie,* 160 W.Va. 385, 235 S.E.2d 138 (1977); *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977). To alleviate such inequity, it determined in State *v. Bolling,* 162 W.Va. 103, 246 S.E.2d 631, 637 (1978), that W. Va. Code §§ 51-7-1 and 2 (1981 Replacement Vol.), requires a court reporter to record all proceedings in a criminal

trial. The purpose of this rule, consistent with requirements of due process, is to assure the availability of an adequate and dependable record for appeal. 246 S.E.2d at 637. *Bolling* also adopted the federal standard regarding record omissions; that is, before an omission of a portion of the proceedings in a criminal trial will constitute reversible error, the defendant must show some identifiable error or prejudice. 246 S.E.2d at 638. Realizing, however, that a mechanistic application of this rule might unduly burden a defendant already handicapped by an inadequate record of his trial, *Bolling* offered the following guidelines concerning when an omission would constitute reversible error:

> In short, we do not intend to thrust the burden on the defendant to pull together a precise reconstruction of the missing record before he may claim error. *It will be sufficient if he can demonstrate that some error or prejudice has resulted and that this is directly related to the lack of a portion of the record.* (Emphasis supplied.)

246 S.E.2d at 638. *See also People v. Merriweather*, 50 Mich. App. 751, 213 N.W.2d 756 (1973), leave to appeal denied, 391 Mich. 809; *State v. Sharich*, 297 Minn. 19, 209 N.W.2d 907 (1973).

Comparing the instant case to *Bolling* reveals that reversal is required. First, defense counsel did not waive the recording of closing arguments but rather moved the trial court to order their recording immediately upon observing that the reporter had closed his shorthand book and left his seat. Second, during the prosecutor's closing argument, he objected to remarks which he believed constituted a violation of the petitioner's constitutional right to stand mute.

After the conclusion of closing arguments, defense counsel moved the court for a mistrial based on the State's impermissible commentary on the defendant's failure to testify.

Since there is no record of that portion of the trial which included the closing arguments, it is virtually impossible for this Court to determine whether or not the prosecutor's remarks were improper. The attorney on appeal, however, submits an affidavit* in which he indicates that the defense attorney did object at the time the remarks were originally made to aspects of the prosecuting attorney's final arguments, objections which were repeated on the record after the jury was deliberating the case. The State has submitted no evidence to the contrary and thus the Court must take it as true that the trial court did permit the prosecuting attorney to argue incorrectly. For this reason this ground also provides a basis for reversal.

## IV.

The appellant also argues that the court below erred in refusing to give one instruction and in giving several others. The instruction which the court failed to give reads as follows:

> The court instructs the jury that if you believe from the evidence that the witnesses Stanley Henline, Danny Miller and DeAnne Squires are accomplices in the crime charged against the defendant in this case, then it is the law that the testimony of one accomplice cannot be considered as being corroborated by the agreeing testimony of another accomplice.

An instruction which adequately states this principle of law was given at the request of the defendant, although it does not name the individuals which the appellant maintains may have been accomplices:

> The court instructs the jury that the testimony of an accomplice in crime, that is, a person who actually commits or participates in a crime, is admissible in evidence, yet the evidence of an accomplice in crime, when not corroborated by some person or persons not implicated in the

---

* See Appendix 1

crime, as to matters material to the issue, that is, matters connecting the defendant with the commission of the crime as charged against him, ought to be received with great caution by the jury before they should convict on such testimony.

In *State v. Demastus,* 165 W.Va. 572, 270 S.E.2d 649, 659 (1980), this Court held that "[i]t is not error for a court to refuse to give a repetitive instruction." This statement is based on a long tradition in West Virginia law which states:

It is not reversible error to refuse to give instructions offered by a party that are adequately covered by other instructions given by the court.

Syllabus Point 20, *State v. Hamric,* 151 W.Va. 1, 151 S.E.2d 252 (1966). *See also State v. Shaffer,* 138 W.Va. 197, 75 S.E.2d 217 (1953); *State v. Blankenship,* 137 W.Va. 1, 69 S.E.2d 398 (1952); and *State v. Lewis,* 133 W.Va. 584, 56 S.E.2d 513 (1949). In the instant case the instruction given at the request of the defendant adequately presents for the jury's consideration the law relating to testimony by an accomplice, and it was not reversible error for the court to refuse to give the requested instruction.[2]

The appellant also argues that the court erred in giving an instruction on reasonable doubt which reads:

The court instructs the jury that although the burden is upon the State to prove the prisoner guilty beyond all reasonable doubt, yet such a doubt is not a mere vague, fanciful or imaginary doubt, but is a good and substantial doubt based upon all the evidence or lack of evidence in the case, and one for which he or she who entertains such doubt should be able to give a good and substantial reason based upon all the evidence or lack of evidence in the case.

---

[2] We note that this Court has eliminated the common law requirement that aiders and abettors be indicated as such to be convicted. *State v. Petry,* ___W.Va. ___, 273 S.E.2d 346 (1980).

While this instruction is clearly contrary to what this Court has said with regard to reasonable doubt *State v. Keffer,* ____ W.Va. ____, 281 S.E.2d 495 (1981); *State v. Goff,* ____ W.Va. ____ 272 S.E.2d 457 (1980), and should not be given again; the court below gave sufficient other instructions on reasonable doubt to correct this error. *State v. Stone,* 165 W.Va. 266, 268 S.E.2d 50 (1980).

The appellant also raises objections to two other instructions as given by the trial court. These instructions are consistent with the requirements of West Virginia law and these objections must, therefore, be overruled.

Since this Court has already reversed the conviction for the grounds stated above, it is not necessary for it to deal with the appellant's contention that the numerous errors committed during the trial had a cumulative affect which prevented the defendant from receiving a fair trial.

For the reasons set forth above this action is reversed and remanded to the Circuit Court of Lewis County where the appellant is to be tried again.

*Reversed and remanded*
*for a new trial.*

## APPENDIX 1

No. 14798
IN THE SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Charleston

STATE OF WEST VIRGINIA,

Plaintiff Below,
Appellee,

v. //

DAVID HELMICK,

Defendant Below,
Appellant.

### AFFIDAVIT OF TRIAL COUNSEL

James E. Roark, being first duly sworn, deposes and says:

1. I was trial counsel for the defendant, David Helmick, in the above-styled action.

2. During the course of the trial of my client, no record was made of either the jury *voir dire* or the closing arguments of counsel.

3. Unfortunately, prejudicial error occurred during both of these stages of the trial proceedings.

### VOIR DIRE

4. After having granted my motion to individually and separately *voir dire* the jury panel, the trial court impermissibly limited my inquiry by sustaining numerous objections of the State to questions which sought to further develop evidence of prejudice on the panel once it became apparent.

5. In particular, the trial court refused to permit development of a relationship between the Prosecuting Attorney Joseph W. Wagoner and one of the panel members, Jacqueline M. Thomas, after Ms. Thomas acknowledged that she had known Mr. Wagoner for some time.

## CLOSING ARGUMENT

6. Approximately 30 seconds into the State's initial remarks on closing argument, a baby began to cry, whereupon the trial court stopped the proceedings and admonished the gallery to silence.

7. At this point, I observed that the court reporter, Delf Norona, had closed his shorthand notebook and had left his designated seat. I approached the bench and moved the court to direct Norona to record the final argument.

8. The court, however, stated that it was not the practice in Lewis County to record closing arguments and denied my motion.

9. Although I objected to this ruling, neither my motion nor my objection were recorded.

10. Thereafter, during the course of the State's closing, I twice objected to certain inflammatory and prejudicial remarks of the State which constituted a flagrant violation of my client's right to stand mute. These objections were not recorded.

11. At the conclusion of closing arguments, I attempted to preserve my objections for the record by moving for a mistrial based on the State's improper arguments. This motion and its denial by the trial court were reported and transcribed.

Further than this this affiant sayeth not.

/s/ James E. Roark
James E. Roark

Taken, subscribed and sworn to before me this 12th day of May, 1981.

My commission expires: October 21, 1985

[Signature]
Notary Public